IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| v. | * | Crim. Case No.:  SAG-16-51 |
| | * | |
| **ANTONIO SHROPSHIRE,** | * | |
| | * | |
| Defendant. | * | |
| | * | |
| *   *   *   *   *   *   *   *   *   *   *   *   * | | |

## <u>MEMORANDUM OPINION</u>

On October 31, 2017, following an eleven-day trial, a jury convicted Antonio Shropshire of conspiracy to distribute and possess with intent to distribute heroin, in addition to substantive charges of possession with intent to distribute heroin and cocaine. On March 1, 2018, United States District Judge Catherine C. Blake imposed sentence, including a total term of 300 months' imprisonment. ECF 353. Shropshire filed a motion for compassionate release on November 29, 2022, ECF 506, and subsequently amended the motion, ECF 512, 516.[1] The Government opposed the motion and Shropshire filed a reply. ECF 522, 523. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, Shropshire's motion will be denied.

**I.    LEGAL STANDARD**

As part of the First Step Act, enacted in December, 2018, Congress expanded 18 U.S.C. § 3582(c), permitting courts to reduce an existing term of imprisonment where "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. No. 115-391, tit. VI, § 603(b), 132 Stat. 5194, 5239–41 (2018). While previously, any motion for

---

[1] Shropshire moved for "leave to amend" the motion for compassionate release on December 27, 2022, ECF 512, and filed what essentially amounted to a supplement of the motion on January 12, 2013, ECF 516. Amendments are typically reserved for pleadings, not motions. *See* Fed. R. Civ. P. 15. Nevertheless, to reach a comprehensive decision, this Court will grant the motion for leave to amend and consider the substance of the "amended" motion for compassionate release.

compassionate release had to be initiated by the Bureau of Prisons ("BOP"), the First Step Act granted defendants the ability to move the Court for a reduction in their sentence for "extraordinary and compelling reasons." *Id.* Before a defendant's motion can be filed with the Court, one of two conditions must be satisfied: (1) the defendant must have exhausted all administrative remedies to appeal the BOP's failure to bring a motion on his behalf, or (2) thirty days must have lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. *Id.* Once a motion is for compassionate release is properly filed, the Court determines whether "extraordinary and compelling reasons" render the inmate eligible for compassionate release and considers whether the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a sentence reduction. *Id.*

**II.   ANALYSIS**

The Government concedes that Shropshire adequately exhausted his administrative remedies. *See* ECF 522 at 6. Although that gatekeeping requirement has been satisfied, Shropshire's motion fails to establish any "extraordinary and compelling reason[]" warranting compassionate release or sentencing reduction.

Congress has charged the United States Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). 28 U.S.C. § 994(t). In response, the Commission defined "extraordinary and compelling reasons" to exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) "other reasons" as

determined by the BOP. *See* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.1(A)–(D) (U.S. SENTENCING COMM'N 2018) [hereinafter "U.S.S.G."]. However, this Court has authority to consider any "extraordinary and compelling reason" that a defendant might raise, regardless of the Sentencing Commission's pronouncements or BOP's definitions. *See United States v. McCoy,* 981 F.3d 271, 284 (4th Cir. 2020).

In his filings, Shropshire cites three potential extraordinary and compelling reasons: (1) the COVID-19 pandemic, (2) an unwarranted sentencing disparity, and (3) a "General Policies Memorandum" issued by Attorney General Merrick Garland on December 16, 2022. First, with respect to the pandemic, Shropshire notes that he has lacerations to his liver and lower intestines from a gunshot wound. While certain liver conditions and diseases are known to present an enhanced risk of viral complications, physical injury to the liver is not a condition typically included on the list. *See Coronavirus Disease 2019 (COVID-19): People Who Are at Higher Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited December 28, 2023). At this point, nearly four years after the pandemic began, Shropshire has been fully vaccinated against COVID-19 and there are certain medications that can be used upon contracting COVID-19 to avoid serious complications in at-risk individuals. Shropshire's institution, FCI McDowell, is presently at Level I, indicating low risk. The pandemic therefore does not present an extraordinary and compelling reason justifying further consideration of release. *See, e.g.*, *United States v. Singh*, 525 F. Supp. 3d 543, 547–48 (M.D. Pa. 2021) (denying compassionate release because defendant's recent vaccination mitigated his risk from COVID-19); *United States v. Locust*, 591 F. Supp. 3d 12, 19–20 (E.D. Va. 2022) (denying compassionate release in part because

3

the low prevalence of COVID-19 at FCI McDowell did not subject defendant to a particularized risk of contracting the virus), *aff'd*, No. 22-6414, 2022 WL 17249664 (4th Cir. Nov. 28, 2022).

With respect to the sentencing disparity that Shropshire asserts, this Court is not persuaded that one exists. Shropshire's citation to the mean and median sentence lengths for drug trafficking crimes in the District of Maryland are unhelpful. This Court unfortunately processes a large number of drug trafficking cases, which come in all shapes and sizes. Shropshire's drug trafficking organization, in which he was a leader, trafficked sizeable quantities of narcotics. Additionally, the organization is responsible for overdose deaths, and the sentencing judge determined that Shropshire had plotted to kill other drug dealers, had threatened to kill witnesses, and had tried to bribe an arresting officer. All of those facts distinguish Shropshire from a "mean or median" drug offender and highlight the purpose of individualized sentencing consideration. *See United States v. Henry*, No. 05-CR-0147, 2022 WL 2905057, at *2–3 (D. Md. July 22, 2022) (explaining that disparate sentencing can result from numerous legitimate factors, and that compassionate release is "not meant to provide movants with an opportunity to simply relitigate their sentencings").

The cases that Shropshire cites as comparators are no more persuasive. In *United States v. Fletcher*, No. 05-CR-0179-01, 2020 WL 3972142 (D. Md. July 13, 2020), the defendant's compassionate release motion was adjudicated in July of 2020, during the heart of the COVID-19 pandemic before any vaccines or treatments were available. At that time, courts and the BOP were working to alleviate prison populations where possible, due to the rapid and relatively uncontrolled spread of the virus in incarcerative settings. *See id.* at *2. Moreover, at the time he filed his motion, Fletcher was 65 years of age, had multiple medical conditions known to place him at high risk of serious complications, and had already served 81% of his original sentence, with his good time credits factored in. *See id.* at *3–4. In contrast, Shropshire is just 38 years of age and has served

4

less than one-third of his original sentence, in addition to the dramatically changed landscape with respect to the pandemic itself.

Shropshire also cites *Babb v. United States*, No. 04-CR-0190, 2021 WL 2315459 (D. Md. June 4, 2021). But Babb's original life sentence was reduced to a total of 360 months, which is five years longer than Shropshire's existing sentence. *Id.* at *20. There is no evident sentencing disparity created between that case and Shropshire's.

Shropshire also cites to a number of murder cases in which defendants received sentences of around 25 years, sometimes slightly more or less. ECF 506 at 7–9; *see, e.g.*, *United States v. Plummer*, 820 F. App'x 234 (4th Cir. 2020). While there is no allegation that Shropshire intentionally murdered anyone, there is evidence that the drug conspiracy he led caused at least one death.

The rest of the cases that Shropshire cites point to great disparities between a defendant and his co-defendants. ECF 523 at 1; *see, e.g.*, *United States v. Ayres*, No. 04-CR-0004, 2023 WL 4867559 (D. Md. July 31, 2023). But here, the disparities are not all significant because co-defendant Antoine Washington received a 264-month sentence that approximates Shropshire's 300-month sentence. *Compare* ECF 364, *with* ECF 353.

Finally, Shropshire also contends that if he were prosecuted today, his prosecutors may not have charged a drug quantity carrying a ten-year mandatory minimum sentence, under a memorandum issued by Attorney General Merrick Garland on December 16, 2022 ("DOJ memorandum"). ECF 516 at 2. That guidance, however, does not apply to Shropshire's case. The DOJ memorandum contemplates that prosecutors will refrain from charges carrying a mandatory minimum sentence in drug cases meeting <u>all</u> of a series of criteria, including that the "defendant's relevant conduct does not involve: the use of violence, the direction to another to use violence, the

credible threat of violence, the possession of a weapon, the trafficking of drugs to or with minors, or the death or serious bodily injury of any person." *Additional Department Policies Regarding Charging, Pleas, and Sentencing in Drug Cases*, Op. Att'y Gen. 2 (Dec. 16, 2022). In contrast, the offense conduct summarized in Shropshire's presentence report begins:

> The Defendant distributed heroin and was a member of a drug conspiracy which distributed over 17 kilograms of heroin from 2010-2017, distributed heroin resulting in the death of at least one user, traded heroin for guns, plotted to kill other drug dealers if necessary in order to steal their heroin and money, robbed other drug dealers of guns and heroin and sold them, demanded that young women pay for heroin with their bodies, bribed law enforcement officers who arrested them, and threatened to kill witnesses. The Defendant and his co-conspirators earned over two million dollars from the sales of heroin and they advertised the strength of their potent poison in order to attract addicts. One co-conspirator even touted the overdoses caused by the organization's heroin.

ECF 338 at 4 ¶ 5. A firearm was recovered from Shropshire's residence, along with drugs. *Id.* at 8 ¶ 21. Shropshire and his co-defendants thus fail to meet the DOJ memorandum's criteria in several respects, including the use of violence or credible threat of violence, possession of weapons, and death of any person.

Shropshire also argues that he has made efforts at rehabilitation. ECF 506-1 at 14–15. He wrote a letter indicating an understanding of what attracted him to life in the drug trade and how it has affected his family. *Id.* He has participated in some BOP programming and has attempted to enroll in many additional classes. *Id.* at 10. He also claims that he has earned hundreds of hours towards his GED and that he maintains a "mostly clean" disciplinary record. ECF 523 at 2. This Court commends Shropshire for his rehabilitative efforts. However, the law expressly provides that "[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). And because this Court affords no weight to his pandemic, sentencing disparity, or DOJ memorandum contentions, Shropshire has not presently identified any factors that

individually or collectively amount to an extraordinary and compelling reason justifying further consideration of his motion.

Because Shropshire has failed to provide an extraordinary and compelling reason for compassionate release, this Court need not address the relevant § 3553(a) sentencing factors. If it were to reach those factors, however, this Court would conclude that the nature of the offenses of conviction—involving the distribution of nearly 18,000 grams of heroin, Shropshire's leadership of the organization resulting in the overdose death of at least one young woman, the organization's use of Baltimore Police Officers to avoid detection, and Shropshire's attempt to obstruct justice and bribe a police officer—justify the original sentence imposed. ECF 334 at 4–8. This Court also notes that the sentencing considerations of deterrence and the need to promote respect for the law counsel against reducing a 300-month sentence to just 120 months, particularly when only a small fraction of the originally imposed sentence has been served. *See United States v. Blackman*, No. 15-CR-0241, 2020 WL 4350007, at *2 (D. Md. July 29, 2020) (declining to grant compassionate release because "[p]ermitting [the defendant] to serve little more than half of his sentence . . . would not serve as an effective deterrent"). This Court maintains that even in light of the positive steps Shropshire has taken towards rehabilitation during his incarceration, the countervailing interests of sufficient deterrence of significant drug trafficking and protection of the public would lead to the 300-month sentence when all of the sentencing factors are weighed. Shropshire's motion for compassionate release, ECF 506, will therefore be denied by separate order.

Dated: January 2, 2024              /s/
                                    Stephanie A. Gallagher
                                    United States District Judge